# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

JOSEPH D. BLUEFORD        *    CIVIL ACTION NO. 17-0639
L.A. DOC # 393195

VERSUS                   *    JUDGE TERRY A. DOUGHTY

TIMOTHY HOOPER, WARDEN    *    MAG. JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

Petitioner Joseph D. Blueford, an inmate in the custody of the Louisiana Department of Corrections in St. Gabriel, Louisiana, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 15, 2017.[1] [doc. # 1]. Petitioner attacks his March 22, 2012 convictions for aggravated battery and possession of a firearm by a convicted felon, his designation as a habitual offender, and his sentences of life at hard labor and a concurrent 65-year hard labor term imposed thereon by Louisiana's 4th Judicial District Court, Parish of Morehouse. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## Background[2]

Blueford was charged with two counts of attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1, and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. On March 22, 2012, the jury acquitted Blueford of one count of attempted murder

---

[1] Blueford resubmitted his petition on June 5, 2017 because he failed to complete the petition on approved forms. [docs. # 4, 5].

[2] The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal, *State v. Blueford*, 48,823 (La. Ct. App. 2 Cir. 3/5/14), 137 So. 3d 54, 55-59. Accordingly, only the history relevant to the pending petition is included.

and convicted him of aggravated battery on the second count and possession of a firearm by a convicted felon. Subsequently, the state filed a habitual offender bill, and the district court found that the defendant was a fourth-felony offender. On March 7, 2013, Blueford was sentenced to serve a life sentence, without parole, at hard labor for aggravated battery and a concurrent 65-year hard labor term, without parole, for possession of a firearm by a convicted felon.

Blueford filed a direct appeal in the Second Circuit Court of Appeal, raising six claims for relief: (1) insufficient evidence to support the convictions; (2) evidence of prior crimes was inadmissible; (3) limited cross examination was impermissible; (4) excessive sentence; (5) illegal jury of 11 persons; and (6) conviction by a non-unanimous jury was unconstitutional. [doc. # 16-4 at 1360-1403]. On March 5, 2014, the Second Circuit affirmed Blueford's convictions and sentences. *Blueford*, 137 So. 3d 54. The Louisiana Supreme Court denied Blueford's subsequent application for writ of certiorari on November 21, 2014. *State v. Blueford*, 2014-0745 (La. 11/21/14), 160 So. 3d 968. Blueford filed a petition for certiorari in the United States Supreme Court, which was denied on April 27, 2015. *Blueford v. Louisiana*, 135 S.Ct. 1900 (2015).

On April 8, 2016, Blueford filed an application for post-conviction relief in the district court. He alleged he was denied effective assistance of counsel when his trial counsel, George W. Britton III, (1) failed to object to a juror, Helen Massey, remaining on the jury and returning a verdict when she said she had not heard or understood the evidence; and (2) failed to file a Motion to Quash the Habitual Offender Bill of Information on grounds that it contained allegations of irrelevant convictions, and failed to object to the inclusion and consideration of such convictions at the habitual offender hearing. Blueford also claimed that the trial court erred when it permitted juror Massey to cast the deciding vote on guilt after admitting she did not hear

and did not understand any of the testimony. [doc. # 16-5 at 1473-1504].

The district court denied the application on August 29, 2016. [doc. # 16-5 at 1505-08][3]. The Second Circuit Court of Appeal denied Blueford's application on December 8, 2016. [doc. # 16-5 at 1543]. On February 1, 2017, Blueford filed a writ application in the Louisiana Supreme Court, [doc. # 16-5 at 1544-76], which the court denied as untimely on April 24, 2017. [doc. # 16-5 at 1577-78].

On May 15, 2017, Blueford filed the instant federal habeas corpus petition raising the same claims as in the state court:

> Claim One: Petitioner was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Louisiana Constitution when counsel
>
> > (1) failed to object to Ms. Massey remaining on the jury and returning a verdict when she said she had not heard or understood the evidence; and
> >
> > (2) failed to file a Motion to Quash the Habitual Offender Bill of Information on grounds that it contained allegations of irrelevant convictions, and failed to object to their inclusion and consideration at the habitual offender hearing.
>
> Claim Two: The trial court erred when it permitted a juror to cast the deciding vote on guilt after admitting she did not hear and did not understand any of the

---

[3] The district court incorporated the State's Objection to Petitioner's Application for Post-Conviction Relief in its Reasons for Judgment and denied Blueford's claim of ineffective assistance of counsel on the basis that (1) "[a]t the outset of *voir dire* the Court specifically directed the venire that they should inform the Court if they did not hear a question or response so that it could be repeated"; (2) no member of the venire indicated they were incapable of serving on the jury because of a mental or physical infirmity; (3) there was no indication during the trial that Ms. Massey had difficulty hearing or understanding the proceedings; (4) "Mr. Britton is a seasoned criminal defense attorney who zealously and competently represented [Blueford] at all stages of" trial; (5) Mr. Britton knew from *voir dire* that Ms. Massey had previously served on another criminal jury; and (6) after consulting with Blueford, Mr. Britton "made the strategic decision to allow deliberations to proceed without objection," which was a "reasonable tactical decision." [doc. # 16-5 at 1507].

testimony, in violation of the right to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 17 of the Louisiana Constitution.

[*see* docs. # 1-2, 5].

The State filed its response on March 14, 2018. [docs. # 15, 16].[4] On March 26, 2018, Blueford filed a reply. [doc. # 17]. On August 28, 2018, the undersigned held an evidentiary hearing on the issue of juror competence, with testimony from Petitioner, his trial counsel, the prosecutor in his case, Stephen Sylvester, and a member of the petit jury from Petitioner's trial. [docs. # 19, 28]. After post-hearing briefing, [docs. # 30, 31, 32], the matter is now ripe.

## Discussion

### I.      Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After a state court has adjudicated a prisoner's claims on the merits, federal review "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). An application for a writ of habeas corpus should be granted if the petitioner shows that the adjudication of the claim in state court:

---

[4] On February 2, 2018, this Court ordered the State to respond whether Blueford exhausted all state remedies available to him and to raise the defense of procedural default if the state contends Blueford has procedurally defaulted on any of his claims. [doc. # 11]. In its response, the State submitted that Blueford has exhausted his state court remedies, and it did not raise the affirmative defense of procedural default. [doc. # 15 at 4]. The State has therefore waived this defense. *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998) ("Where omission is the result of a purposeful or deliberate decision to forgo the [procedural default] defense, the district court should, in the typical case, presume that waiver to be valid.").

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740 (citations and internal quotations omitted). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

5

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

AEDPA's statutory scheme is designed to discourage state prisoners from submitting new evidence in federal court. *Cullen*, 563 U.S. at 186. However, when a state court fails to adjudicate a claim on the merits, a federal court may consider new evidence. *See Rapelje v. McClellan*, 134 S. Ct. 399, 400 (2013) ("A federal evidentiary hearing is permissible for a particular claim only if . . . the claim was not 'adjudicated on the merits by a state court.'"). Here, the state court did not hold a hearing or make findings of fact on Blueford's claim that his Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to object to a juror remaining on the jury after she said she failed to hear or understand the evidence. Accordingly, this Court may consider new evidence and render a decision on the merits. *See Banks v. Vannoy*, 708 F. App'x 795, 800 (5th Cir. 2017) (citing *Rapelje*, 134 S. Ct. at 400).

## II.    Petitioner's Claims

### A. Claim One: Ineffective Assistance of Counsel

Blueford asserts that his counsel was ineffective in two respects: (1) in failing to object to Ms. Massey remaining on the jury and returning a verdict when she had not heard or understood the evidence; and (2) in failing to file a Motion to Quash the Habitual Offender Bill of Information and failing to object to the inclusion and consideration of prior convictions at the habitual offender hearing.

To prevail on an ineffective assistance claim, a petitioner (1) "must show that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [him]." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to prove either prong defeats the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). The prongs of this test need not be analyzed in

any particular order. *See Strickland*, 466 U.S. at 697. Further, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1042.

To satisfy the first prong, Blueford must prove his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In applying the first prong, federal courts presume counsel has provided competent professional assistance. *See id.* at 689-90. A court deciding an ineffectiveness claim must judge the reasonableness of counsel's conduct on the facts of the case, at the time of the conduct, keeping in mind that counsel's function "is to make the adversarial testing process work in the particular case." *Id.* at 690.

To establish prejudice under the second prong, Blueford must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This requires showing that counsel's actions "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *Id.* at 687, and not merely that the outcome would have been different. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).

*1. Failure to Object*

*(i) Facts*

Blueford's first ineffective assistance of counsel claim centers on his attorney's performance during jury deliberations. At the conclusion of trial, the judge provided jury instructions, directed the jury to retire, and excused the two alternate jurors. After a recess, the court reconvened, and the following exchange occurred:

Court:   Let's return to the record in the *State v. Joseph Blueford*, 11–14F. The defendant is present with

7

|  |  |
|---|---|
|  | counsel. The state is also present. Madam Bailiff has handed me a note from the jury. It reads: "Your Honor, a juror Ms. Massey has said that she has not heard and has not understood anything that was said in trial and she is wondering what to do. Shouldn't you have an alternate juror?" That is the question. |
| Mr. Sylvester: | Too late for that. |
| Mr. Britton: | We cannot have an alternate juror. |
| Mr. Sylvester: | That's right. |
| Court: | The last question is should Ms. Massey be excused or allowed to go on with deliberations? |
| Mr. Britton: | I mean, I don't know. If they have ten, they have ten verdicts, regardless of what Ms. Massey has to say. So I don't think she should be excused. But if they don't have a verdict, they don't have a verdict, you know, whichever Ms. Massey goes. |
| Court: | So at this time it would be the pleasure of the counsel not to excuse her from any jury deliberations? |
| Mr. Britton: | That's right. |
| Mr. Sylvester: | Yes, sir. |
| Court: | All right. |
| Mr. Britton: | I think if we look at it this way in terms of the jury, we go in that courtroom and talk to a witness, there should be a speaker behind the jury box or something like that. |
| Court: | I would like to explain to them that once the deliberations start, the ju--alternates are dismissed. |

The jury was then brought back into the courtroom.

|  |  |
|---|---|
| Court: | Members of the jury, before the proceedings, a note was submitted to the bailiff. The note reads: "Your Honor, the juror Ms. Massey said she has not heard and does not understand anything that's been said in the trial. She doesn't know what to do. Should we have an alternate juror?" Let me advise you that under the Code of Criminal Procedure once the jury begins jury deliberations, the two alternates are excused. I'd also like to remind you that the provisions or charge still say that at least ten of you must agree on the same verdict on each count. It requires ten of the twelve agreeing on each count. So that is my response to you. I don't know how |

8

> many we addressed everyone here and asked them to repeat, and at no time was there any indication that Ms. Massey was having a problem. So, I'd encourage you to go back and resume your deliberations.

The jury was then recessed from the courtroom for further deliberations, with Ms. Massey included. [doc. # 16-2 at 1158-60]; *Blueford*, 137 So. 3d at 66.

Blueford argues that "[w]ithout having heard the evidence and understood what was said in trial, [Ms.] Massey could not form her own opinion and make a valid determination as to guilty or innocence in the case." [doc. # 1-2 at 11]. Allowing her to remain on the jury therefore denied Blueford his fundamental right to a fair and impartial jury. (*Id.* at 18). Blueford claims his trial counsel "did not investigate potential solutions to the problem caused by Ms. Massey not hearing or understanding the evidence, or the potential impact of" Ms. Massey's vote, nor did trial counsel know or review whether Ms. Massey could be replaced with an alternate juror, which undermines any claim that Mr. Britton made a strategic decision to allow Ms. Massey to remain on the jury. (*Id.* at 19-20). Overall, Blueford argues that Mr. Britton's lack of action constituted a failure to protect Blueford's fundamental rights. (*See id.* at 18).[5]

The State responds that Mr. Britton's decision to keep Ms. Massey on the jury was a "strategic" one: "Mr. Britton made a deliberate choice to proceed with deliberations without

---

[5] After the verdict, the jury filled out polling slips indicating how they voted. On the aggravated battery charge, the jury voted 10-2 in favor of conviction. According to Blueford, Ms. Massey voted with the majority on all three ballots. Blueford contends his conviction is unconstitutional in part because only nine jurors who voted in favor of conviction were competent. [doc. # 1-2 at 12-14]. However, as explained below, Blueford's conviction is unconstitutional because he did not receive a trial by twelve competent jurors, not because the incompetent juror happened to vote to convict him. Had Ms. Massey voted not to convict, Blueford would still be entitled to habeas relief.

objection or a request for a hearing." [doc. # 15 at 12]. The State argues that based on the record, specifically that Ms. Massey explained during *voir dire* that she had served on a criminal jury in the past, which acquitted the defendant, "Mr. Britton wanted to take his chances with Ms. Massey." (*Id.* at 12-13). Further, the State contends "[t]here had been no showing the Ms. Massey had trouble hearing or understanding the testimony." and "[w]ith the Petitioner's consent, trial counsel took a gamble and kept Ms. Massey on the jury." (*Id.* at 13-14).

At the evidentiary hearing, Mr. Britton testified that he did not object to Ms. Massey's remaining on the jury after the court received the note, and that he thought Ms. Massey would be a good juror based on her answers during *voir dire*, the fact that she had previously served on a jury that rendered a not guilty verdict, and due to his gut feelings as an attorney. However, Mr. Britton admitted that Ms. Massey could not be a good juror if she did not hear and understand the testimony. Mr. Britton stated that he thought the note was the foreman's attempt to get Ms. Massey off the jury. He did not consider asking for a mistrial because he felt the trial had gone fairly well. Finally, Mr. Britton admitted he was not aware of a procedural rule whereby he could have asked the court to hold an evidentiary hearing to determine whether Ms. Massey should be removed. If he had known there was such a procedure, he would have asked the court to conduct a hearing.

In his post-hearing brief, Blueford notes that Mr. Britton's testimony demonstrates he was unaware that he could have sought a hearing on the issue of Ms. Massey's competence. [doc. # 30 at 2-3]. Blueford also argues that without inquiring into what Ms. Massey did or did not hear during trial, "Mr. Britton lacked sufficient knowledge to form an intelligent and reasoned basis to make a strategic decision." (*Id.* at 5). Blueford also submits that the court "must find **as a matter**

**of undisputed fact** that Juror Massey did not hear or understand anything that was said at trial," because there is no evidence to the contrary. (*Id.* at 6).

In its post-hearing brief, the State claims, based on Mr. Britton's testimony that he always seeks his client's input during jury selection, did not think Ms. Massey had any hearing problems, and thought Ms. Massey would be a good advocate, that Mr. Britton simply made a tactical decision. [doc. # 31 at 3-4].[6]

*(ii) Analysis*

The Sixth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. This clause has been interpreted to mean that a defendant is entitled to "a tribunal both impartial and mentally competent to afford a hearing." *Tanner v. United States*, 483 U.S. 107, 126 (1987) (quoting *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912)). To satisfy this fundamental standard, jurors must be able to "conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Biagas v. Valentine*, No. 4:06-CV-0668, 2007 WL 1217976, at *7 (S.D. Tex. Apr. 23, 2007), *aff'd*, 265 F. App'x 166 (5th Cir. 2008) (quoting *Lockhart v. McCree*, 476 U.S. 162, 184 (1986)); *see McIlwain v. United States*, 464 U.S. 972, 975 (1983) (Marshall, J.

---

[6] At the hearing and in their post-hearing briefs, [docs. # 30, 31, 32], the parties also addressed whether Mr. Britton was ineffective for allowing the court to dismiss the alternate jurors when jury deliberations began, which allegedly prevented Ms. Massey from later being removed from the jury. However, under La. Code Crim. Proc. art. 789, alternate jurors may be discharged "when the jury retires to consider its verdict." Therefore, removal of the alternate jurors after deliberations began was not premature and does not provide grounds for Blueford's ineffective assistance of counsel claims.

dissenting from denial of certiorari) ("Due process requires that *every* member of a jury meet minimal requirements of mental competence and impartiality.").

Due process "protects a defendant from jurors who are incapable of rendering an impartial verdict," such as when a juror is insane or biased against the defendant. *Peters v. Kiff*, 407 U.S. 493, 501–02 (1972). Likewise, a physical infirmity, such as a hearing impairment, can render a juror incompetent to serve on a jury. *See Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1078 (3d Cir. 1985) (noting a juror could be "incapable of rendering satisfactory jury service" if unable to hear the trial proceedings); *see, e.g.*, *United States v. Leahy*, 82 F.3d 624, 629 (5th Cir. 1996) (district court removed a hearing impaired juror after jury deliberations had begun because he "had not heard significant amounts of testimony[] and could not participate in deliberations"); *United States v. Quiroz-Cortez*, 960 F.2d 418, 419 (5th Cir. 1992) (after jury deliberations had begun, district court excused a hard of hearing juror who may not have heard all of the trial testimony); *United States v. L'Hoste*, 609 F.2d 796, 801 n.4 (5th Cir. 1980) (prior to jury deliberations, the district court disqualified a juror as incompetent after concluding "she had a hearing impairment and had not heard portions of the testimony").

Further, state courts have found that a juror's inability to hear or comprehend testimony can infringe upon a defendant's Sixth Amendment right. *See, e.g.*, *People v. Trevino*, 826 P.2d 399, 401 (Colo. App. 1991) (the effect of one juror's inability to hear testimony during trial denied defendant "the right to a jury of twelve"); *State v. Speer*, 124 Ohio St. 3d 564, 569 (2010) (juror's hearing impairment prevented her from perceiving and evaluating the evidence so that defendant did not receive a fair trial); *Com. v. Brown*, 231 Pa. Super. 431, 436 (1974) ("The presence of a juror with a physical impairment of such magnitude as to interfere with the juror's

ability to hear and understand the presented testimony and evidence precludes a verdict by all jurors. Such a disability would render the juror incompetent to serve and would deny appellant's right to an impartial jury and a fair hearing."); *State v. Turner*, 186 Wis. 2d 277, 285 (Ct. App. 1994) (holding that defendant's constitutional right to an impartial jury was infringed when jurors were unable to hear testimony of material witnesses); *State v. Freeman*, 539 So. 2d 739, 741 (La. Ct. App. 3d Cir. 1989) (noting a loss of hearing would disqualify a juror if it rendered the juror "incapable of performing her duties").

"It is clearly established that the Supreme Court views the denial of the right to an impartial decisionmaker to be such an error that taints any resulting conviction with constitutional infirmity." *Virgil v. Dretke*, 446 F.3d 598, 607 (5th Cir. 2006). While a hearing impairment alone does not "warrant a presumption of prejudice in the ineffective assistance of counsel context, the fundamental nature" of the right to an impartial and competent jury "serves as an important guidepost" in evaluating whether a defendant was denied effective assistance of counsel. *Id.* "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696.

Here, the trial transcript indicates that, after receiving the foreman's note indicating that Ms. Massey had not heard or understood anything that was said during the trial, the court briefly conferred with the prosecutor and defense counsel. Mr. Sylvester and Mr. Britton agreed it was too late to replace Ms. Massey with an alternate juror, and Mr. Britton, without consulting his

13

client, informed the court he did not want to excuse Ms. Massey. The trial court then brought the jury back into the courtroom, informed them that there was no indication that Ms. Massey had been having any problems during the trial and the jury needed only ten jurors to agree on a verdict, and sent all of the jury members, including Ms. Massey, back to resume deliberations. The court did not hold, and Mr. Britton did not request, a hearing to determine whether Ms. Massey was actually unable to hear or understand the evidence. Therefore, the trial court made no factual findings to support the implied conclusion that Ms. Massey was competent.

Without full knowledge of the facts or the law, defense counsel's decisions cannot be considered conscious or strategic. Both the trial transcript and his testimony at the hearing reveal that Mr. Britton believed an incompetent juror could remain on the jury simply because Louisiana does not require a unanimous verdict to convict. As he stated, "If they have ten, they have ten verdicts, regardless of what Ms. Massey had to say." [doc. # 16-2 at 1159]. In doing so, Mr. Britton demonstrated his ignorance of his client's constitutional right to twelve competent jurors. Further, Mr. Britton admitted that he did not know of the right to an evidentiary hearing regarding Ms. Massey's competency. Though Mr. Britton testified that he did not ask for a mistrial because he thought the case had gone well, he agreed that Ms. Massey would not be a good juror if she could not hear or understand anything that was said during the trial.

In this case, neither the trial court nor defense counsel conducted even a rudimentary inquiry into Ms. Massey's competence. No effort was made to determine whether she had heard and understood what was said at trial and whether she could competently consider all of the evidence. When faced with a possibly incompetent juror, Mr. Britton essentially did nothing. Given the trial court record and Mr. Britton's hearing testimony, Mr. Britton's decision to keep

14

Ms. Massey on the jury cannot be considered a conscious and informed trial tactic. Mr. Britton's failure to explore Ms. Massey's alleged incompetence and/or challenge her as a juror constitutes deficient performance under *Strickland*.

Blueford must also establish that counsel's deficient performance prejudiced his defense and that the state court's decision was an unreasonable application of clearly established federal law. *Virgil*, 446 F.3d at 611. "*Strickland*'s prejudice standard is a well-rehearsed phrase in the inferior federal courts: 'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Due to counsel's deficient performance, Ms. Massey remained on the jury that convicted Blueford. The law mandates that jurors "render a verdict based on the evidence presented in court," but that did not occur here. *See id.* at 613 (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). A juror who cannot hear or understand any of the evidence presented in court cannot logically render a verdict based on the evidence, and therefore, is not an impartial and competent decision maker. *See Biagas*, 2007 WL 1217976 at *7 (finding a juror whose biased views would impair his duties as a juror was unable to decide the case solely on the evidence, and therefore, was incompetent to serve on a jury). Had Mr. Britton requested some sort of inquiry into Ms. Massey's competence, "the trial judge would have been forced to rule, a ruling that counsel could have objected to and pursued as error on direct appeal." *Virgil*, 446 F.3d at 613. In the absence of evidence to the contrary, this Court must take Ms. Massey at her word that she was unable to hear

and understand what was said at trial. Therefore, she was incompetent to serve on the jury and could not render a verdict based on a fair consideration of the evidence.

Given the fundamental nature of a defendant's right to a trial by an impartial and competent jury, the result in this case is unreliable. "Our criminal justice system is predicated on the notion that those accused of criminal offenses are innocent until proven guilty and are entitled to a jury of persons willing and able to consider fairly the evidence presented in order to reach a determination of guilt or innocence." *Id.* Blueford was denied these basic rights.

Mr. Britton did not challenge Ms. Massey's remaining on the jury, move for a mistrial, request an evidentiary hearing, or consult with his client regarding any of these possible responses to Ms. Massey's revelation. Blueford was prejudiced by the presence of Ms. Massey, an incompetent juror, in violation of the Sixth and Fourteenth Amendments, and the state court's decision to the contrary is an unreasonable application of clearly established federal law. "Expressed in *Strickland* terms, the deficient performance of counsel denied [Blueford] an impartial [and competent] jury, leaving him with one that could not constitutionally convict, perforce establishing *Strickland* prejudice with its focus upon reliability." *Id.* at 614.

In sum, counsel's failure to follow up in response to Ms. Massey's note constitutes "objectively unreasonable" performance, which denied Blueford a competent jury and thus a fair and reliable trial under *Strickland. See Strickland*, 466 U.S. at 687. The state court's rejection of Blueford's ineffective assistance of counsel claim was contrary to the Supreme Court's decision in *Strickland. See Virgil*, 446 F.3d at 614. Therefore, Blueford is entitled to federal habeas corpus relief under the AEDPA.

Accordingly, **IT IS RECOMMENDED** that the Petition for habeas corpus relief on this ground be **GRANTED**.

### 2. Failure to File a Motion to Quash

*(i) Facts*

Blueford next claims his counsel was ineffective in failing to file a motion to quash the habitual offender bill of information on the grounds that it contains irrelevant convictions, and in failing to object to the inclusion and consideration of such convictions at the habitual offender hearing.[7]

Following Blueford's conviction, the State filed a habitual offender bill of information. At the habitual offender hearing, the State presented evidence of Blueford's past criminal history and convictions. Based on the evidence, the trial court found Blueford was at least a fourth felony offender under Louisiana law and enhanced both of his sentences. [doc. # 16-3 at 1297-98, 1307-08].

Blueford argues that his counsel was "ineffective in failing to quash or object to the enhancement . . . on the grounds that the State did not specify which sentence . . . the State was seeking to enhance." [doc. # 1-2 at 23]. Blueford claims the court cannot enhance multiple sentences for convictions based on a single criminal episode and he was prejudiced by counsel's failure to file a motion to quash or object to the "double enhancement" due to "the imposition of the increased sentence." (*Id.* at 23-24). Further, Blueford argues his counsel was ineffective for failure to file a motion to quash the bill on the grounds that some of predicate offenses could not

---

[7] During the habitual offender hearing on March 5, 2013, Blueford was represented by Jayden Nolen. [*see* doc. # 16-2 at 1271].

be used to enhance his sentence. (*Id.* at 24-27). Finally, Blueford argues there were other errors in the habitual offender adjudication, including that he was not informed of his right to remain silent at the multiple offender hearing and counsel failed to challenge Blueford's prior guilty plea hearings. (*Id.* at 27-28).

The State responds that the Louisiana Supreme Court has held, contrary to Blueford's assertion, that a defendant may be subject to enhancements for all sentences that result from a single course of criminal conduct. [doc. # 15 at 15]. Further, any error from the trial court's failure to inform Blueford of his right to remain silent at the multiple offender hearing was harmless. (*Id.* at 16).

*(ii) Analysis*

Blueford's claim fails the *Strickland* test because Blueford has not shown counsel's performance in this respect was deficient. Blueford's argument that the court cannot enhance both of his sentences since they arose out of the same criminal episode is incorrect. The rule that multiple convictions obtained on the same day could be used only as one predicate offense changed in 2005; a court can enhance "multiple sentences obtained on the same date arising out of a single criminal act or episode." *State v. Shaw*, 2006-2467 (La. 11/27/07), 969 So. 2d 1233, 1244-45; *see Blueford*, 137 So. 3d at 65. Therefore, enhancing both of Blueford's sentences was permissible under Louisiana's habitual offender law, La. Stat. Ann. § 15:529.1. Further, Blueford has not provided legal support for his claims that the predicate offenses relied upon by the State could not be used to enhance his sentences.

"[C]ounsel is not required to make futile motions or objections." *Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012). Here, counsel did not render ineffective assistance in choosing not

to object or for failing to file a motion to quash, because any objection to the alleged errors would have been futile.

Additionally, any error in the court's failure to advise Blueford of his right to remain silent at the habitual offender hearing is harmless because Blueford remained silent throughout the hearing, and the State presented competent evidence of Blueford's identity and his prior convictions. *See State v. Johnson*, 31,448 (La. App. 2 Cir. 3/31/99), 747 So. 2d 61, 66 ("[B]ecause adequate proof exists as to both identity and the prior offenses, and the record shows that [Petitioner] remained silent throughout the proceedings, he cannot show prejudice."); [*see also* docs. # 16-2 at 1271-82, 16-3 at 1283-99].

Finally, Blueford's claim that counsel was ineffective for failing to challenge his prior guilty pleas is unsupported. In a habitual offender proceeding, once the State meets its initial burden of proving a defendant's prior guilty pleas, the burden shifts to the defendant to show "an infringement of his rights or a procedural irregularity in the taking of the pleas." *State v. Kunzman*, 31,976 (La. App. 2 Cir. 5/5/99), 741 So. 2d 112, 120. At his trial, Blueford testified and admitted to pleading guilty to the illegal use of weapons or dangerous instrumentalities, simple burglary of an inhabited dwelling, conspiracy to commit simple burglary, and distribution of a false controlled dangerous substances. [doc. # 16-2 at 1254-60]. The State provided the court with the transcripts of these admissions during the habitual offender hearing [doc. # 16-2 at 1278-79]. The State therefore met its initial burden of proving Blueford had pleaded guilty to prior criminal offenses, and Blueford has provided no evidence that his constitutional rights were infringed in connection with his guilty pleas. Thus, his counsel was not ineffective for failing to challenge the pleas.

Accordingly, **IT IS RECOMMENDED** that the Petition for habeas corpus relief on this ground be **DENIED**.

### B. Claim Two: Trial Court Error

Blueford's second claim is that "the trial court erred when it permitted a juror to cast the deciding vote on guilt after admitting she did not hear and did not understand any of the testimony, in violation of defendant's right to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendment[s] to the Constitution, and LSA Constitution Article 1 § 7." [doc. # 1-2 at 28]. His claim echoes those of his ineffective assistance of counsel claim—since Ms. Massey allegedly did not hear or understand anything said at trial, she was an incompetent juror, and the failure to dismiss her denied Blueford due process and a fair trial. (*Id.* at 29-31).

"[A] federal court may grant habeas relief on account of constitutional error only if it determines that the constitutional error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Robertson v. Cain*, 324 F.3d 297, 304 (5th Cir. 2003) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).[8]

Here, the trial court did not offer a mistrial, conduct an evidentiary hearing, or even question Ms. Massey about her claim that she had not heard the testimony at trial. Absent some sort of hearing or fact finding, the State's argument that Ms. Massey was clearly competent is unavailing. Without evidence to the contrary, this Court must assume that Ms. Massey was telling the truth when she said she did not hear or understand anything said at trial, and therefore was incompetent. As discussed above, *see supra* Part II.A.1., a defendant has a Sixth Amendment

---

[8] "[I]n cases governed by AEDPA, federal habeas courts should continue to analyze the harmlessness of all state court decisions involving a constitutional 'trial' error according to the *Brecht* standard." *Robertson*, 324 F.3d at 306–07.

right to a competent jury. Blueford was denied this right when Ms. Massey was permitted to remain on the jury and render a verdict. Therefore, the trial court's decision to allow Ms. Massey to remain on the jury had a substantial and injurious effect on the jury's verdict.

Accordingly, **IT IS RECOMMENDED** that the Petition for habeas corpus relief on this ground be **GRANTED**.

<u>Conclusion</u>

For the reasons state above, **IT IS RECOMMENDED** that the Petition for habeas corpus filed by Petitioner Joseph Blueford [doc. # 1, 5] be **GRANTED** and the matter be **REMANDED** to the 4th Judicial District Court, Parish of Morehouse, for a new trial or for further proceedings not inconsistent therewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

21

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 16th day of October, 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE