# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **JOSEPH D. BLUEFORD**<br>**L.A. DOC # 393195** | **CIVIL ACTION NO. 3:17-CV-00639** |
| **VERSIS** | **JUDGE TERRY A. DOUGHTY** |
| **TIMOTHY HOOPER, WARDEN** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Petitioner Joseph D. Blueford ("Blueford"), an inmate in the custody of the Louisiana Department of Corrections in St. Gabriel, Louisiana, filed the instant Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on May 15, 2017. Blueford attacks his March 22, 2012 Louisiana state court convictions for aggravated battery and possession of a firearm by a convicted felon, his designation as a habitual offender, and his sentences of life at hard labor and a concurrent 65-year hard labor term.

On October 16, 2018, the Magistrate Judge issued a Report and Recommendation recommending that the Petition be granted on two of the three grounds asserted therein [Doc. No. 33]. Specifically, the Magistrate Judge recommended that the Petition be granted on the grounds that (1) Blueford was denied effective assistance of counsel when his counsel failed to object to a juror remaining on the jury and returning a verdict when she said she had not heard or understood the evidence and (2) the trial court erred when it permitted a juror to cast the deciding vote on guilt after admitting she did not hear and did not understand any of the testimony, in violation of the right to a fair trial and due process. The Magistrate Judge recommended that the Petition be denied as to the third asserted grounds, that Blueford was denied effective assistance of counsel when his counsel failed to file a Motion to Quash the Habitual Offender Bill of

Information.  The delay for filing objections to the Magistrate Judge's Report and Recommendation has passed, and no objections have been filed.

Having conducted a *de novo* review of the record in this matter, the Court DECLINES TO ADOPT the Report and Recommendation insofar as it recommended that the Petition be granted on the two grounds set forth above.  The Court ADOPTS the Report and Recommendation insofar as it recommends that the Petition be denied as to the asserted grounds pertaining to his counsel's failure to file a Motion to Quash the Habitual Offender Bill of Information.  Accordingly, the Court DENIES the Petition.

## I. FACTUAL BACKGROUND[1]

A shooting incident occurred after midnight on January 1, 2011, at the Townhouse Club in Bastrop, Louisiana.  According to witnesses at the scene, Blueford engaged in a brief fistfight in the parking lot, got into the driver's side of a truck, and then began firing a pistol out of the passenger window.  Two people in the parking lot were struck by bullets, one in the leg and the other in the hand.

Blueford was charged in the Fourth Judicial District Court, Morehouse Parish, Louisiana, with two counts of attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1, and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1.

Blueford was tried by a jury in March 2012.  Blueford was represented by George W. Britton, III ("Britton").  The prosecutor was Stephen Sylvester ("Sylvester").  At the conclusion of trial, the judge provided jury instructions, directed the jury to retire, and excused the two alternate jurors.  After a recess, the court reconvened, and the following exchange occurred:

    Court:                  Let's return to the record in the State v. Joseph

---

[1] The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeals, *State* v. *Blueford*, 48,823 (La. App. 2 Cir. 3/5/14), 137 So. 3d 54, 55-59.  Accordingly, only the history relevant to the pending petition is included.

|                 | Blueford, 11-14F. The defendant is present with counsel. The state is also present. Madam Bailiff has handed me a note from the jury. It reads: "Your Honor, a juror Ms. Massey has said that she has not heard and has not understood anything that was said in trial and she is wondering what to do. Shouldn't you have an alternate juror?" That is the question. |
| --- | --- |
| Mr. Sylvester: | Too late for that. |
| Mr. Britton: | We cannot have an alternate juror. |
| Mr. Sylvester: | That's right. |
| Court: | The last question is should Ms. Massey be excused or allowed to go on with deliberations? |
| Mr. Britton: | I mean, I don't know. If they have ten, they have ten verdicts, regardless of what Ms. Massey has to say. So I don't think she should be excused. But if they don't have a verdict, they don't have a verdict, you know, whichever Ms. Massey goes. |
| Court: | So at this time it would be the pleasure of the counsel not to excuse her from any jury deliberations? |
| Mr. Britton: | That's right. |
| Mr. Sylvester: | Yes, sir. |
| Court: | All right. |
| Mr. Britton: | I think if we look at it this way in terms of the jury, we go in that courtroom and talk to a witness, there should be a speaker behind the jury box or something like that. |
| Court: | I would like to explain to them that once the deliberations start, the ju—alternates are dismissed. |

The jury was then brought back into the courtroom.

| Court: | Members of the jury, before the proceedings, a note was submitted to the bailiff. The note reads: "Your Honor, the juror Ms. Massey said she has not heard |
| --- | --- |

> and does not understand anything that's been said in the trial. She doesn't know what to do. Should we have an alternate juror?" Let me advise you that under the Code of Criminal Procedure once the jury begins jury deliberations, the two alternates are excused. I'd also like to remind you that the provisions or charge still say that at least ten of you must agree on the same verdict on each count. It requires ten of the twelve agreeing on each count. So that is my response to you. I don't know how many we addressed everyone here and asked them to repeat, and at no time was there any indication that Ms. Massey was having a problem. So, I'd encourage you to go back and resume your deliberations.

The jury was then retired from the courtroom for further deliberations, with Ms. Massey ("Massey") included. [Doc. No. 16-2 at 1158-60]; *Blueford*, 137 So. 3d at 66.

The jury acquitted Blueford on one count of attempted murder by a vote of 10-2. On the second count of attempted murder, it convicted him of the responsive verdict of aggravated battery by a vote of 10-2. The jury also convicted Blueford of the possession of a firearm by a convicted felon count by a vote of 11-1. Ms. Massey voted with the majority on all three ballots. *Blueford*, 137 So. 3d at 67.

After the state filed a habitual offender bill, the district court found that Blueford was a fourth-felony offender and sentenced him to serve a life sentence at hard labor for aggravated battery and a concurrent 65-year hard labor term, without parole, for possession of a firearm by a convicted felon.

Blueford's conviction was affirmed on direct appeal by the Louisiana Second Circuit Court of Appeal on March 5, 2014. *Blueford*, 137 So.3d 54. The Louisiana Supreme Court denied Blueford's subsequent application for writ of certiorari on November 21, 2014; *State v. Blueford*, 2014-0745, 160 So.3d 968 (La. 11/21/14).

On April 8, 2016, Blueford filed an application for post-conviction relief in the state district court. He alleged he was denied effective assistance of counsel when his trial counsel, Britton, (1) failed to object to Massey remaining on the jury and returning a verdict when she said she had not heard or understood the evidence; and (2) failed to file a Motion to Quash the Habitual Offender Bill of Information on grounds that it contained allegations of irrelevant convictions, and failed to object to the inclusion and consideration of such convictions at the habitual offender hearing. Blueford also claimed that the trial court erred when it permitted Massey to cast the deciding vote on guilt after admitting she did not hear and did not understand any of the testimony. [Doc. No. 16-5 at 1473-1504].

The state district court denied the application on August 29, 2016. The district court incorporated the State's Objection to Petitioner's Application for Post-Conviction Relief in its Reasons for Judgment and denied Blueford's claim of ineffective assistance of counsel on the basis that (1) "[a]t the outset of voir dire the Court specifically directed the venire that they should inform the Court if they did not hear a question or response so that it could be repeated"; (2) no member of the venire indicated she or he was incapable of serving on the jury because of a mental or physical infirmity; (3) there was no indication during the trial that Massey had difficulty hearing or understanding the proceedings; (4) "Mr. Britton is a seasoned criminal defense attorney who zealously and competently represented [Blueford] at all stages of" trial; (5) Mr. Britton knew from voir dire that Massey had previously served on another criminal jury; and (6) after consulting with Blueford, Mr. Britton "made the strategic decision to allow deliberations to proceed without objection," which was a "reasonable tactical decision." [Doc. No. 16-5 at 1507].

5

The Second Circuit Court of Appeal denied Blueford's application on December 8, 2016. On February 1, 2017, Blueford filed a writ application in the Louisiana Supreme Court, which the court denied as untimely on April 24, 2017.

On May 15, 2017, Blueford filed the instant federal habeas corpus petition raising the same claims as in the state court:

> Claim One: Petitioner was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Louisiana Constitution when counsel
>
> > (1) failed to object to Ms. Massey remaining on the jury and returning a verdict when she said she had not heard or understood the evidence; and
> >
> > (2) failed to file a Motion to Quash the Habitual Offender Bill of Information on grounds that it contained allegations of irrelevant convictions, and failed to object to their inclusion and consideration at the habitual offender hearing.
>
> Claim Two: The trial court erred when it permitted a juror to cast the deciding vote on guilt after admitting she did not hear and did not understand any of the testimony, in violation of the right to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 17 of the Louisiana Constitution.

[Doc. Nos.1-2, 5].

The State filed its response on March 14, 2018, [Doc. Nos. 15, 16], in which it submitted that Blueford has exhausted his state court remedies and argued that Blueford had no substantive grounds to support his Petition. [Doc. No. 15 at 4]. On March 26, 2018, Blueford filed a reply. [Doc. No. 17].

On August 28, 2018, the Magistrate Judge held an evidentiary hearing on the issue of juror competence, with testimony from Blueford, Britton, Sylvester, and a member of the petit jury from Petitioner's trial. Britton explained his decision to have Ms. Massey remain on the jury:

> [I]t seemed from my perspective improbable that she didn't hear anything. We had a voir dire process. She was questioned during the voir dire process.
> It appeared, from the words of the particular message, to be an effort to get her off the jury from the foreman – from the foreman's perspective. Because, like I said, we had with a little voir dire. I asked questions of each one of the potential jurors. Mr. Sylvester had questioned each one of the prospective juror. And the foreman note suggested to me that that was an effort to get her off the jury.

[Doc. No. 34, p 9-10].

> And she was a juror that was, in terms of my my experience with a jury appeared to be a good juror.
> . . .
> Based on her answers in voir dire, based upon, you know, gut reaction, gut feelings of an attorney, I thought she was a good juror.

[Doc. No. 34, p 13]

> My recollection is during the general course of voir dire, there were questions generally asked have you ever served on a jury before? And my recollection, she had served, and it was not guilty on that.

[Doc. No. 34, p. 24]

> In terms of if everybody that says that were found not guilty, I'm going to try to put them on the jury, that's not a hard-and-fast rule. It depends on how they respond to other questions and a totality of the situation, ultimately gives me some type of grade as to how strongly should the jury is and how likely that juror is to be receptive to my case.

[Doc. No. 34, p. 25]

> [F]rom the wording on the note, it appeared the foreman was trying to get rid of Ms. Massey. And it wasn't like it was a note that came from Ms. Massey. It was the note came from the foreman saying that she didn't hear anything.

[Doc. No. 34, p. 29]

> This is the foreman speaking to Ms. Massey, worded in a way that would suggest to me that he wants an alternate to be sent in to be on the jury.

7

[Doc. No. 34, p. 34]

> [S]he was one of the higher-rated [] jurors.

[Doc. No. 34, p. 34-35]

When asked why he didn't ask for a mistrial, Britton responded:

> I guess, based upon my recollection and the particular transcript, I would say that whether we could get a mistrial, would it effect a mistrial, I felt the trial had gone fairly well at that particular point in time. I felt like, you know, we were going to get some not guilty verdict in terms -- that's just me, you know, projecting in terms of how the trial was going.

[Doc. No. 34, p. 32]

As indicated above, the jury found Blueford not guilty on one count of attempted second degree murder, and guilty of only a responsive verdict of aggravated battery on the other count of attempted second degree murder.

On October 16, 2018, the Magistrate Judge filed her Report and Recommendation [Doc. No. 33]. The delay for filing objections has passed, and the matter is ripe.

## II. LAW AND ANALYSIS

### A. Deference to the State Habeas Decision

This § 2254 habeas application is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). The parties agree that the state habeas court adjudicated Blueford's claims on the merits. Accordingly, this Court must defer to the state habeas decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also, e.g., Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010).

"AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), and AEDPA, therefore, "'demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Consequently, AEDPA erects a "formidable" standard, *Burt*, 571 U.S. at 19, that "precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Where the state merits decision was not accompanied by reasons, a federal court "'must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court.'" *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (quoting *Harrington*, 562 U.S. at 102). "If this standard is difficult to meet—and it is— that is because it was meant to be." *Burt*, 571 U.S. at 20 (internal quotes omitted).

### B. Ineffective Assistance of Counsel Claims

To prevail on a claim of constitutionally ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. In reviewing counsel's performance, however, courts must be "highly deferential," must eliminate the "distorting effect of hindsight," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Prejudice, in turn, means "a reasonable probability that, but for counsel's

9

professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough, however, to show that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 693. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Furthermore, a court assessing prejudice "must consider the totality of the evidence before the judge or jury" because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)) (other citations omitted). Because *Strickland* is a general standard, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664); *see also Harrington*, 562 U.S. at 105 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial."). And when a federal court reviews a *Strickland* claim under § 2254, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Finally, it is well settled that a state court's "*unreasonable* application of [*Strickland*]"—which AEDPA demands—"is different from an

*incorrect* application of [Strickland]." *Id*. at 101 (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 410 (2010) (emphasis in original)).

"[W]hen considering a motion for summary judgment in the context of habeas corpus cases, the state court's factual findings are presumed correct unless the petitioner can show by clear and convincing evidence that the presumption should not apply." *Norris v. Davis*, 826 F.3d 821, 827–28 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1203 (2017) (citing 28 U.S.C. § 2254(e)(1)).

### 1. **Failure to Object to Juror Massey**

Blueford first submits that the Court "must find **as a matter of undisputed fact** that Juror Massey did not hear or understand anything that was said at trial" because there is no evidence to the contrary [Doc. No. 30, at 6]. This is a misstatement of the burden of proof. It is the petitioner who must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland, supra.* Additionally, the burden of proof was on Blueford to prove that Massey did not hear or understand the testimony at trial. No testimony given at the evidentiary hearing proved this important issue. The trial judge, who was present at the trial, heard the testimony, and heard the *voir dire* questions and answers, found there was no indication during the trial that Massey had difficulty hearing or understanding the proceedings. Factual findings made by the trial judge should be given due deference. The trial judge was present and able to observe Massey. Blueford did not provide any evidence to overturn the trial judge's factual find that Massey did not have difficulty hearing or understanding the proceedings.

Blueford further argues that, because she did hear or understand anything said at trial, Massey could not form her own opinion and make a valid determination as to guilt or innocence

**11**

in the case, and that allowing her to remain on the jury therefore denied him his fundamental right to a fair and impartial jury. [Doc. No. 30, at 11, 18]. He claims his trial counsel did not investigate potential solutions to the problem caused by Massey not hearing or understanding the evidence, or the potential impact of her vote, nor did trial counsel know or review whether Massey could be replaced with an alternate juror, which undermines any claim that Britton made a strategic decision to allow her to remain on the jury [Doc. NO. 19-20]. Overall, Blueford argues that Britton's lack of action constituted a failure to protect Blueford's fundamental rights.

The State responds that Britton's decision to keep Massey on the jury was a strategic one. The State argues that based on the record, specifically that Massey explained during *voir dire* that she had served on a criminal jury in the past, which acquitted the defendant, Britton wanted to take his chances with her. Further, the State contends there had been no showing that Massey had trouble hearing or understanding the testimony.

Blueford's arguments were presented and rejected in the state habeas court proceedings. He has failed to show that the state court unreasonably applied *Strickland*.

Defense counsel's "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.'" *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). A court reviewing those choices is required "'not simply to give [counsel] the benefit of the doubt … but to affirmatively entertain the range of possible reasons [he] may have had for proceeding as [he] did.'" *Feldman v. Thaler*, 695 F.3d 372, 380 (5th Cir. 2012) (quoting *Pinholster*, 131 S. Ct. at 1407) (first brackets added).

Britton was faced with having to make a tactical decision that was double-edged in nature. By seeking to remove her as a juror, he was facing the risk of losing a juror that he considered to be very receptive to his defense, a juror who had served on a prior jury that had

**12**

acquitted a defendant, a juror whom he perceived the other jurors were trying to get rid of, and a juror who he judged to have actually had no problem hearing during the trial, despite the note, which he further did not believe came from her personally.

The United States Court of Appeals for the Fifth Circuit has explained that counsel is afforded particular leeway where a potential strategy carries "double-edged" consequences. *St. Aubin v. Quarterman*, 470 F.3d 1096, 1103 (5th Cir. 2006). For instance, it has held that "'a tactical decision not to . . . present potentially mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance.'" *Id.* (quoting *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997)); *see also, e.g., Mann v. Scott*, 41 F.3d 968, 984 (5th Cir. 1994) (strategic decisions with "double-edged" consequences "are 'granted a heavy measure of deference in a subsequent habeas corpus attack'") (quoting *Wilkerson v. Collins*, 950 F.2d 1054 (5th Cir. 1992)).

This "double-edged" principle extends to counsel's tactical decision to forego a lesser-included-offense instruction to which his client would otherwise be entitled. In *Druery v. Thaler*, for example, the Fifth Circuit held that counsel did not err by foregoing a lesser-included-offense instruction to Texas capital murder where counsel "articulated a valid strategic reason for declining the instruction: to obtain a full acquittal." 647 F.3d 535, 540 (5th Cir. 2011). Indeed, even though counsel was "mistaken in part" about the availability of the instruction, the Court held that "this all-or-nothing strategy was not objectively unreasonable" under *Strickland* because counsel's "ultimate strategic choice was reasonable." *Id.; see also Thomas v. Vannoy*, 651 F. App'x 298, 303-04 (5th Cir. 2016) (unpublished) (explaining that, "[i]n the … context of lesser-included offense instructions, this court has recognized that counsel's choice not to request an instruction is a matter of strategy and subject to reasonable debate") (citing *Druery*). Such a

decision "dwells in the region of tactics and strategy," because the lesser-included offense instruction could "increase the chance of conviction on some charge," while foregoing it "could … le[a]d to a complete acquittal." *Adams v. Bertrand*, 453 F.3d 428, 435-36 (7th Cir. 2006) (brackets added).

Similarly, the state habeas court could have reasonably concluded that Britton made an informed choice to keep Massey on the jury. Under the double-deference required by AEDPA, the state habeas court would not have been "unreasonable" in concluding that Britton's strategy—either keeping a juror receptive to his defense or losing her—was a "'strategic choice[ ] made after thorough investigation of law and facts relevant to plausible options'" that was "'virtually unchallengeable.'" *Rhoades*, 852 F.3d at 434 (quoting *Strickland*, 466 U.S. at 690).

Given that strategy, the state habeas court also could have reasonably concluded that dismissing Massey would have created a double-edged problem for Blueford. It could have lowered Blueford's chances of obtaining an acquittal—which Britton actually secured for him with regard to one of the attempted murder charges, in addition to the verdict of guilty to the substantially less serious charge of aggravated battery on the other attempted murder charge. *See, e.g., Adams*, 453 F.3d at 436.

This is precisely the kind of double-edged consequences the Fifth Circuit has previously recognized as precluding a finding of counsel's deficient performance. *Druery*, 647 F.3d at 539-40; *Thomas*, 651 F. App'x at 303-04. "Even under *de novo* review," a court would be "most deferential" to such strategic choices, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105. *A fortiori*, under AEDPA, the state court would not have been "unreasonable" to conclude that Britton did not err

**14**

by declining to seek to dismiss Massey. *See Harrington*, 562 U.S. at 101 (explaining "[t]he pivotal question [under AEDPA] is whether the state court's application of the *Strickland* standard was unreasonable," which is "different from asking whether defense counsel's performance fell below *Strickland's* standard").

Blueford argues that he is entitled to habeas relief because Britton admitted that he did not know of the right to an evidentiary hearing regarding Massey's competency. But even had Britton been aware of the possibility of such a hearing, he would still have been faced with the same double-edged problem. Indulging the presumption required by *Strickland*, the Fifth Circuit has found effective representation even where counsel was "mistaken in part of his legal reasoning" for taking a particular course so long as counsel's "ultimate strategic choice" was "reasonable." *Druery*, 647 F.3d at 540.

In any event, the reasonableness of Britton's decision not to seek to remove Massey is not the question before the Court. Under AEDPA, rather, the "pivotal question" is whether the state habeas court "unreasonably" applied Strickland in determining that Britton provided effective assistance. *Harrington*, 562 U.S. at 104. As already explained, the issue was not whether Britton could have requested that Massey be dismissed or could have requested an evidentiary hearing. Rather, the issue was whether Britton could have reasonably chosen to retain Massey in order to increase his client's chances of a favorable verdict.

Indeed, indulging the presumption required by *Strickland*, the Fifth Circuit has found effective representation even where counsel was "mistaken in part of his legal reasoning" for declining a lesser-included-offense instruction so long as counsel's "ultimate strategic choice"—an "all-or-nothing strategy"—was "reasonable." *Druery*, 647 F.3d at 540.

15

The state habeas court could have reasonably determined under *Strickland* that Britton made an informed choice. Nothing in this record suggests the state habeas ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103. Even if this Court thought Britton should have pursued a different strategy, "[AEDPA] and *Strickland* … do not permit federal judges to so casually second guess the decisions of their state court colleagues or defense attorneys." *Burt*, 134 S. Ct. at 15. The question is not whether "perhaps looking back it would have been wiser for counsel to press for a conviction on a compromise verdict … [because] we will not pick apart counsel's strategic choice with the benefit of hindsight." *Lopez v. Thurmer*, 594 F.3d 584, 588 (7th Cir. 2010) (internal quotation marks omitted). Accordingly, this Court DECLINES TO ADOPT the Magistrate Judge's Report and Recommendation and DENIES the Petition for Writ of *Habeas Corpus* relief on this ground.

### 2. Failure to File a Motion to Quash

The Magistrate Judge's Report and Recommendation recommended that Blueford's Petition for Writ of *Habeas Corpus* relief on the ground his counsel was ineffective in failing to file a motion to quash the habitual offender bill of information on the grounds that it contains irrelevant convictions, and in failing to object to the inclusion and consideration of such convictions at the habitual offender hearing be DENIED.

The Court has conducted a *de novo* review of the record and finds that the Magistrate Judge's Report and Recommendation on this issue is supported by the law and the evidence. Accordingly, the Court ADOPTS the Report and Recommendation on this issue, and DENIES the Petition for Writ of *Habeas Corpus* relief on this ground.

### C. Trial Court Error

Blueford's next claim is that "the trial court erred when it permitted a juror to cast the deciding vote on guilt after admitting she did not hear and did not understand any of the testimony, in violation of defendant's right to a fair trial and due process under the Fifth, Sixth, and Fourteenth Amendment[s] to the Constitution, and LSA Constitution Article 1 § 7." [Doc. No. 1-2 at 28]. His claim echoes those of his ineffective assistance of counsel claim—since Massey allegedly did not hear or understand anything said at trial, she was an incompetent juror, and the failure to dismiss her denied Blueford due process and a fair trial. ]Id. at 29-31].

As indicated above, this Court must defer to the state habeas decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also, e.g., Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010).

"AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), and AEDPA, therefore, "'demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Consequently, AEDPA erects a "formidable" standard, *Burt*, 571 U.S. at 19, that "precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The record shows that, when denying Blueford's state habeas application, the trial judge noted (1) that at the outset of *voir dire* it specifically directed the venire that they should inform the Court if they did not hear a question or response so that it could be repeated; (2) that no

member of the venire indicated they were incapable of serving on the jury because of a mental or physical infirmity; (3) there was no indication during the trial that Massey had difficulty hearing or understanding the proceedings; (4) that Britton was a seasoned criminal defense attorney who zealously and competently represented Blueford at all stages of trial; (5) Britton knew from *voir dire* that Massey had previously served on another criminal jury in which the defendant was acquitted; and (6) that after consulting with Blueford, Britton made the strategic decision to allow deliberations to proceed without objection which was a reasonable tactical decision. [Doc. No. 16-5 at 1507].

As discussed previously, Blueford failed to prove that Massey could not hear the proceedings in order to overcome the trial judge's specific factual finding that there was no indication during the trial that Massey had difficulty hearing or understanding the procedings.

Blueford has failed to show that the state habeas decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, for this reason, and for the reasons set forth above in addressing Blueford's ineffective assistance of counsel claims, this Court DECLINES TO ADOPT the Magistrate Judge's Report and Recommendation and DENIES the Petition for Writ of *Habeas Corpus* relief on this ground.

### III. CONCLUSION

For the reasons set forth above, the Court **DECLINES TO ADOPT** the Report and Recommendation insofar as it recommends that the petition be granted as to the asserted grounds pertaining to his counsel's failing to object to Juror Massey remaining on the jury and as to the asserted grounds of the trial court allowing Juror Massey to remain on the jury. The Court **ADOPTS** the Report and Recommendation insofar as it recommends that the petition be denied

as to the asserted grounds pertaining to his counsel's failure to file a Motion to Quash the Habitual Offender Bill of Information. Accordingly, the Court **DENIES** the Petition.

Monroe, Louisiana, this 1st day of November, 2018.

*[signature]*
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**